# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**EPOCH PROPERTIES, INC.,**

    Plaintiff,

    v.                        Case No. 8:24-cv-01208-WFJ-NHA

**CITY OF PALMETTO**,

    Defendant.

_____/

## ORDER

Before the Court is Defendant City of Palmetto's (the "City") Motion to Dismiss the Complaint. Dkt. 41. Plaintiff Epoch Properties, Inc. ("Epoch") has responded in opposition. Dkt. 42. Upon due consideration, the Court grants in part and denies in part the City's motion to dismiss the Complaint.

## BACKGROUND

This case revolves around Plaintiff Epoch's land sale contract with Gdawg Ventures, LLC ("Gdawg") and the subsequent battle with the City over Epoch's development plans. Dkt. 1 ¶¶ 8-10. In August 2020, Epoch Properties, Inc. entered into a purchase and sale agreement to purchase a tract of land in Palmetto, Florida (the "Property") from Gdawg. Dkt. 1-1 at 2, 21. Epoch agreed to a purchase price of $8,750,000 and to deposit $50,000 in escrow to be credited toward the purchase

price. Dkt. 1-1 at 3–4. Epoch intended to develop the tract into an apartment complex with at least 320 units. Dkt. 1-1 at 6. After all the precedent conditions had been met, the closing date was scheduled to be the earlier of thirty days after the satisfaction of the closing contingencies or thirty days after the expiration of the approval period. Dkt. 1-1 at 13. Importantly, Epoch states it is only an "equitable owner of the [P]roperty," and "Gdawg is the record title holder of the Property." Dkt. 1 ¶¶ 2, 9. The Court here reflects factual allegations as set forth in the Complaint.

One of the precedent conditions was Epoch's right to terminate if any adverse conditions—defined as conditions that would impede the issuance of a permit or license for Epoch's intended use—were discovered or imposed. Dkt. 1-1 at 10–11. Similarly, the closing contingencies were conditioned upon Epoch's receipt of a site plan approval from the City for Epoch's intended use. Dkt. 1-1 at 6. The approval period was defined as the six-month anniversary of the expiration of the inspection date. Dkt. 1-1 at 6. The inspection date was defined as sixty days after the date of execution of the contract or three business days after execution of an incentive agreement with the City to provide redevelopment incentives, whichever is later. Dkt. 1-1 at 7.

On or about March 1, 2021, Epoch submitted an initial development plan to the City for the development of at least 320 apartment homes. Dkt. 1 ¶¶ 11, 15; Dkt. 1-1 at 6. Following the City's request for changes, Epoch submitted an amended

application (the "Current Application"), in which Plaintiff sought the development of at least 255 apartment homes, along with amendments to two City ordinances. Dkt. 1 ¶¶ 16-20. These ordinances, passed in 1999, rezoned the tract to allow for mixed-use developments. Dkt. 1 ¶¶ 16, 17. In the Current Application, Epoch also sought a departure from city ordinances (the "Deviations"), including reducing the size of parking, reducing perimeter landscape buffering, reducing building wall-to-wall setbacks, and reducing setbacks along the public right-of-way. Dkt. 1-4 at 3–4.

On May 9, 2022, the City of Palmetto Planning and Zoning Board (the "Zoning Board") recommended approval of the Current Application at a public hearing. Dkt. 1 ¶ 21. Following this hearing, Epoch and Gdawg entered into an amended purchase and sale agreement ("Fifth Agreement"). Dkt. 1 ¶ 22; Dkt. 1-2 at 3. In this agreement, the parties set the inspection period to expire six months from the date of its execution. Dkt. 1-2 at 1. However, the parties also agreed to extend the inspection period to five business days after the satisfaction of several conditions—one being the City's approval of the amended development plan. Dkt. 1-2 at 1. The inspection period also extends if Epoch and Gdawg are (1) pursuing satisfaction of the conditions or (2) are in pending litigation related to several of the conditions. *Id.*

After the parties adopted the Fifth Agreement, the City held two public hearings on the Current Application on June 1, 2022, and June 6, 2022. Dkt. 1 ¶ 28.

At the hearings, Epoch alleges that it did not have a chance to address the City Commissioners' questions about whether Epoch could complete development without the Deviations. Dkt. 1 ¶¶ 25-29. Instead, the City Commissioners summarily stated their intention to deny the Current Application. Dkt. 1 ¶ 29. On June 8, 2022, Epoch sent a letter to the City stating that Epoch would be able to complete development without the Deviations. Dkt. 1 ¶ 30; *see* Dkt. 1-3. Despite these assurances that the Deviations could be dropped, the City adopted an order (the "Final Order") denying the Current Application because the Deviations were inconsistent with the City's overall development plan and zoning code. Dkt. 1 ¶ 32; Dkt. 1-4 at 10.

Epoch challenged the Final Order under the Florida Land Use and Environmental Dispute Resolution Act ("FLUEDRA"), Fla. Stat. § 70.51. Dkt. 1 ¶ 35. In the FLUEDRA-required mediation proceedings, Epoch proposed a new plan ("Revised Plan") with lower density and no deviations. Dkt. 1 ¶ 36. The City's representative (City Commissioner Brian Williams) approved the Revised Plan at the mediation. Dkt. 1 ¶¶ 37-41. Additionally, the FLUEDRA special magistrate, the City's attorney, the City Planning Staff, and an outside expert recommended adopting the Revised Plan. *Id*. On June 27, 2023, the City held another public hearing to consider the Revised Plan, but one City Commissioner (Tamara Cornwell) indicated a preference for a commercial addition to the otherwise residential plan.

4

Dkt. 1 ¶¶ 45-47. The City Commissioners ultimately rejected the Revised Plan by a vote of four to one. Dkt. 1 ¶ 51.

Following the City's rejection of the Revised Plan, the City issued a "Statement of Uses Available on Owner's Land" for the Property as required under FLUEDRA. Dkt. 1 ¶¶ 52; Dkt. 1-5. The City stated that Epoch could develop the tract for "specialty retail, office, hotel, multi-family," and "affordable housing," but noted that the "Commission expressed a stated desire for a mixed-use . . . with a minimum of 20,000 square feet of non-residential uses . . . ." Dkt. 1-5 at 3. After receiving the statement letter, an appraiser issued a report to Epoch on the valuation of the Property, reducing its value from $7.65 million to $1 million based on the City's final rejection. Dkt. 1-7 at 3, 5. Gdawg and Epoch used this appraisal in a letter they sent to the City providing notice of a claim under the Bert J. Harris Act, Fla. Stat. § 70.001. Dkt. 1-6 at 2. The City responded, stating "the City of Palmetto proposes no changes to its prior action." Dkt. 1-8 at 2.

On May 17, 2024, Epoch filed the instant action against the City, alleging that the City of Palmetto's zoning decision renders the plot economically infeasible to develop. Dkt. 1 ¶¶ 8, 48. Because of this infeasibility, Epoch sues the City, claiming (1) a *per se* taking in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Art. X, § 6(a), of the Florida Constitution; (2) an unconstitutional imposition of an unlawful condition under 42 U.S.C. § 1983; (3) a

violation of Plaintiff's procedural due process rights under 42 U.S.C. § 1983; and (4) an inordinate burdening of the property under Fla. Stat. § 70.001, et seq. Dkt. 1 at 12, 14, 17, 20. Epoch also commenced a state action against Gdawg. Dkt. 18 at 2; Dkt. 42 at 4.

On June 24, 2024, the City moved to stay the instant proceeding during the pendency of the state action, arguing in part that the Court does not have jurisdiction because Epoch does not have standing to bring its claims and Epoch is not the real party in interest. Dkt. 19 at 18–22. However, the Court struck Defendant's standing argument from the City's motion. Dkt. 24.

In deciding the rest of the City's motion to stay, the Court issued an Endorsed Order stating that "[t]he issue [is] whether [a purchaser] could achieve standing . . . given the fact that [purchaser] did not own the property, but was a putative vendee on a contract to sell[,] where the seller is contending in a pending state court case that the contract is now void." Dkt. 37. The Court denied the motion to stay without prejudice, reasoning that "although the case law is scant," Epoch's argument that it had equitable standing was "colorable" and the contract did not read as "option only," which "might" otherwise "disentitle [Epoch] from asserting this . . . right as vendee." Dkt. 37.

The City now moves to dismiss the entire Complaint. Dkt. 41. The City argues that Epoch does not have standing and is not the real party in interest, and even if

that were not true, Epoch has insufficiently pled its claims. Dkt. 41 at 6.

## LEGAL STANDARD

### I.  Rule 12(b)(1) Motion to Dismiss

Motions to dismiss for lack of subject matter jurisdiction brought under 12(b)(1) may attack jurisdiction facially or factually. *Morrison v. Amway Corp.*, 232 F.3d 920, 924 n.5 (11th Cir. 2003) (citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1528–29 (11th Cir. 1990)). Facial attacks challenge jurisdiction based solely on the face of the complaint. *Id.* Factual attacks, on the other hand, challenge jurisdiction based on the facts outside of the complaint. *Carmichael v. Kellog, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009). Here, Defendant does not assert additional facts and relies solely on the Complaint to challenge jurisdiction. Dkt. 41 at 7–11. Because Defendant raises a facial attack, the Court must accept all the allegations in the Complaint as true in deciding the motion. *Lawrence*, 919 F.2d at 1529.

### II.    Rule 12(b)(6) Motion to Dismiss

A complaint withstands dismissal under Rule 12(b)(6) if the alleged facts state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In reviewing the complaint, all facts are accepted as true, and all reasonable inferences from those facts are viewed in the light most favorable to the plaintiff. *Id.* at 678 (citing *Twombly*, 550 U.S. at 556)); *see also Papasan v. Allain*, 478 U.S. 265,

286 (1986) (stating that legal conclusions "couched" as facts need not be accepted as true); *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003) (stating that "legal conclusions masquerading as facts" will not prevent dismissal).

## DISCUSSION

### I.    Standing—Article III and Real Party in Interest

The City's motion purports to seek dismissal under Rule 12(b)(6) but spends substantial time arguing Epoch lacks standing to bring its claims. Dkt. 41 at 7–11. Standing is a prerequisite to the Court exercising judicial power—it is a "threshold jurisdictional" issue that "must be addressed prior to and independent of the merits of a party's claims." *United States v. Ross*, 963 F.3d 1056, 1062 (11th Cir. 2020) (en banc) (quotation omitted) (quoting *AT&T Mobility, LLC v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 494 F.3d 1356, 1359 (11th Cir. 2007)). A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction is the proper procedural vehicle to challenge standing. *Kennedy v. Floridian Hotel, Inc.*, 998 F.3d 1221, 1234 (11th Cir. 2021). As such, the Court addresses the City's standing argument under the 12(b)(1) legal standard.

The City argues that Epoch lacks standing because it cannot satisfy the injury in fact element because it holds "no legal or equitable interest" in the Property.[1] Dkt.

---

[1] The other two elements of standing—causation and redressability—are not at issue. Dkt. 41 at 11; *Sullivan Props., Inc. v. City of Winter Springs*, 899 F. Supp. 587, 592 (M.D. Fla. 1995).

41 at 11. To have standing, the plaintiff must have suffered an "injury in fact—that is, an invasion of a *legally protected interest*[,] which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical . . . ." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citation omitted) (emphasis added). Although Article III standing ensures the plaintiff has a "legally protected interest," *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 980 (11th Cir. 2005) (citing *Dillard v. Baldwin Cnty. Comm'rs*, 225 F.3d 1271, 1275 (11th Cir. 2000)), Article III standing and the real party in interest requirement are "two 'distinct issues' with separate considerations," *Fisher v. PNC Bank, N.A.*, 2 F.4th 1352, 1358 (11th Cir. 2021) (citations omitted).

### a. Article III Standing

On the issue of Article III standing, Defendant argues that "Plaintiff cannot be deemed to suffer any injury in fact, as Florida law holds that option contract holders have no legal or equitable interest in property, especially where Plaintiff seeks monetary compensation for its claimed property rights in this Action." Dkt. 41 at 11. Plaintiff responds, contending that "[Defendant] conflates the prior 'real-party-in-interest' analysis with the Article III standing analysis." Dkt. 42 at 5. The Court agrees with Plaintiff.

Where a developer has contracted to acquire property and submitted plans to a locality, and that locality has rejected those plans, the developer suffers an injury

in fact. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 260 (1977).[2] In *Village of Arlington Heights*, a developer contracted to acquire a property to develop multi-family housing; the agreement required that the developer prevail in rezoning—if not, the agreement would be rescinded. *Id.* at 256. The developer submitted detailed and specific plans to the locality, but the locality refused to rezone. *Id.* at 260. During litigation, the locality challenged the developer's standing under the injury in fact prong because "[i]ts contract of purchase is contingent upon securing rezoning," so "it is not the owner of the property in question." *Id.* at 261.

The Supreme Court disagreed, ruling that the developer had suffered an injury in fact because it "expended thousands of dollars on the plans . . . and on the studies submitted to the [locality] in support of the petition for rezoning." *Id.* at 262. The Court continued, "[u]ntil rezoning is granted, many of these plans and studies will be worthless even if [the developer] finds another site at an equally attractive price." *Id.* Thus, the developer had standing to assert its constitutional claims against the locality. *Id.* at 263.

Here, Epoch's position is analogous to the developer in the *Villages of Arlington Heights*. As in that case, where the developer contracted to acquire property under the condition of receiving the locality's approval for the development

---

[2] *See Sullivan Props., Inc.*, 899 F. Supp. at 592; *Brantley Cnty. Dev. Partners, LLC v. Brantley Cnty.*, 559 F. Supp. 3d 1345, 1358–67, 1359 n.3 (S.D. Ga. 2021), *denying reconsideration*, No. CV 519-109, 2022 WL 736111 (S.D. Ga. Mar. 10, 2022); *Housing Invs., Inc. v. City of Clanton*, 68 F. Supp. 2d 1287 (M.D. Ala. 1999).

plan, Epoch's agreement with Gdawg to acquire the tract was conditioned upon the City's approval of its development plan. *See id.* at 256; Dkt. 1-1 at 6–7. Like the developer in *Villages of Arlington Heights*, Epoch also submitted detailed and specific development plans that the City rejected. *See* 429 U.S. at 260; Dkt. 1 at 9. Furthermore, Epoch has suffered financial harm because its plans and studies of the Property are worthless without the City's approval. *See Villages of Arlington Heights*, 429 U.S. at 262; Dkt. 1 ¶¶ 59, 63, 67, 68, 75, 78; Dkt. 1-7 (finding the value of the Property reduced from $7.65 million to $1 million). Thus, the Court finds that Epoch has standing to assert its constitutional and statutory claims. *Villages of Arlington Heights*, 429 U.S. at 263.

> b.  *Epoch is a Real Party in Interest Because Epoch Holds Equitable Title*

Next, the City challenges Epoch's status as the real party in interest to the Property. Dkt. 41 at 7. The Federal Rules of Civil Procedure "do not contain a specific procedure for raising" this challenge. *Pro Premium Fin. Co., Inc. v. US Premium Fin. Serv. Co., LLC*, No. 0:16-CV-60009-UU, 2016 WL 6248599, at *5 (S.D. Fla. Oct. 26, 2016). A real party in interest challenge "closely resembles the defense of failure to state a claim because it presupposes that the plaintiff does not have the substantive right to enforce the claim being made." *New York ex rel. Schneiderman v. Intel Corp.*, 827 F. Supp. 2d 369, 374 (D. Del. 2011) (quotation omitted) (quoting 6A Charles Alan Wright et al., *Federal Practice and Procedure* §

1554 (3d ed. 2010)). As such, the proper procedural vehicle for bringing this challenge is a 12(b)(6) motion. *See In Dime We Trust, RLT v. Armadillo Distrib. Enters., Inc.*, No. 8:21-CV-1967-SDM-AAS, 2022 WL 4461805, at *9 (M.D. Fla. Aug. 10, 2022) (citing *Pro Premium Fin Co.*, 2016 WL 6248599, at *5 and *Trondheim Cap. Partners, LP v. Life Ins. Co. of Ala.*, 505 F. Supp. 3d 1213, 1225 (N.D. Ala. 2020)). Thus, the Court addresses the City's real party in interest argument under the 12(b)(6) standard.

Federal Rule of Civil Procedure 17(a)(1) provides that "[a]n action must be prosecuted in the name of the real party in interest." Rule 17(b)(3) further explains that "[c]apacity to sue or be sued is determined" by state law. Florida Rule of Civil Procedure 1.210(a) mirrors Rule 17(a)(1), but unlike the federal rule, the Florida rule is permissive rather than mandatory because it allows anyone having an interest in the action and the relief sought to join as a plaintiff. *See Holyoke Mut. Ins. Co. in Salem v. Concrete Equip., Inc.,* 394 So. 2d 193, 196–97 (Fla. 3d DCA 1981) (explaining that, in the alternative, the plaintiff "had the right to maintain its action in the name of" an interested party for the plaintiff's own use and benefit) (citing *Atl. Coast Line R.R. Co. v. Campbell*, 139 So. 886 (Fla. 1932)).

Under the doctrine of equitable conversion, a purchase agreement, combined with a deposit on the purchase price, even if conditioned, confers real party in interest status on the purchaser in actions concerning restrictions on that land. *See*

*Andrew v. Hecker*, 182 So. 251, 257 (Fla. 1938); *Arko Enterprises, Inc. v. Wood*, 185 So. 2d 734, 738 (Fla. 1st DCA 1966). In other words, "[t]he doctrine of equitable conversion 'regards as done [that which] ought to be done,' in order to protect a party's interest in real property." *Veigle v. United States*, 888 F. Supp. 1134, 1141 (M.D. Fla. 1995) (citing *Weise v. Kizer*, 435 So.2d 381, 382–83 (Fla. 5th DCA 1983), *aff'd sub nom. Ariko v. United States*, 92 F.3d 1198 (11th Cir. 1996).

When a purchaser agrees to buy land from a seller and makes an earnest money deposit, but that agreement is conditioned on clearing restrictions on the land, with the deposit returning to the purchaser if the restrictions are not cleared, the agreement makes the purchaser the real party in interest in a suit to remove restrictions. *See Andrew*, 182 So. at 257–58. In *Andrew*, a purchaser agreed to buy a property and deposited the agreed upon price. *Id.* at 254. However, the agreement was conditioned upon the seller clearing restrictions, foreclosing the developer's intended use. *Id.* Because the seller's action to clear restrictions was unsuccessful, the purchaser then sued for the same. *Id.* at 257. The Supreme Court of Florida held that the purchaser was the real party in interest in an action to clear restrictions because the purchaser, "under the contract of sale, had an interest in the subject of the litigation and the relief sought." *Id.*

Although *Andrew* dealt with an action to remove restrictions, a purchaser who agrees to buy land and makes a deposit is also the real party in interest in a suit

seeking damages. *See Arko*, 185 So. 2d at 740. In *Arko*, a purchaser agreed to buy a parcel and paid the seller a deposit upon execution of the agreement. *Id.* at 735. The seller was obligated to secure approval of the purchaser's development plan. *Id.* However, the government acquired the parcel by eminent domain prior to closing. *Id.* The purchaser sued for reimbursement of the deposit, arguing that eminent domain frustrated performance, causing recission. *Id.* at 736.

The *Arko* court reasoned that the remedy was either recission or conveyance of the property in the form of eminent domain proceeds. *Id.* at 738. Under the doctrine of equitable conversion, once the purchaser agreed to buy the property and paid a deposit, the seller held only "naked" legal title, and the purchaser, with "beneficial" title to the property, bore the risk of loss. *Id.* at 737–40 (citations omitted). The court in *Arko* held that the purchaser is entitled to eminent domain proceeds, and the seller's remedy is a lien in the amount due on the property's purchase price. *Id.* at 740–41. The corollary of the *Arko* court's ruling is that the purchaser, who bore the risk of loss to the property and was thereby entitled to the eminent domain proceeds, was the real party in interest in the eminent domain proceeding seeking compensation. *See id.*

Here, Epoch's position is most analogous to *Andrew* and *Arko*. As in *Andrew*, where the purchaser agreed to buy land and made an earnest money deposit, Epoch agreed to buy the tract from Gdawg and made a deposit. 182 So. at 254; Dkt. 1-1 at

3–4. In *Andrew*, although the agreement was conditioned upon clearing restrictions preventing the purchaser from his intended use—a condition that failed—the Supreme Court of Florida still held that the purchaser was the real party in interest in the action to clear the restrictions. 182 So. at 254, 257. Similarly, Epoch's agreement is conditioned on approval of its plan, which has not occurred. Dkt. 1-1 at 7. Despite conditional approval, Epoch is still entitled to bring suit as the real party in interest against the City in an action concerning restrictions. 182 So. at 257.

Additionally, although Epoch holds only equitable title, it is entitled to seek compensation. As in *Arko*, where the purchaser agreed to buy a parcel and made a deposit, Epoch agreed to buy a tract and deposited the purchase price. 185 So. 2d at 735; Dkt. 1-1 at 3–4. Like the seller in *Arko*, who was obligated to secure approval of the purchaser's plan, Epoch's purchase agreement required the City's approval of its development plan. 185 So. 2d at 735; Dkt. 1-1 at 7. Importantly, as in *Arko*, where the government acquired the parcel by eminent domain before closing, Epoch factually alleges restrictions imposed on the tract amounting to a taking before closing. 185 So. 2d at 735; Dkt. 1 ¶ 82. Therefore, having paid a deposit towards the purchase price, Epoch holds a "beneficial" title to the tract and bears the risk of loss. *See Arko*, 185 So. 2d at 738. The Court finds that Epoch is a real party in interest under the doctrine of equitable conversion. *See* 185 So. 2d at 740–41.

## II.    Failure to State a Claim in Counts I-IV

Because Plaintiff has standing to bring its claims, the Court turns to the City's merit arguments for failure to state a claim under Rule 12(b)(6).[3]

### a.  Count I— Per se *Takings Claim*

The City contends that Epoch has failed to adequately plead a *per se* takings claim because it has not been deprived of all economic use of the Property where the value of the Property is nonzero. Dkt. 41 at 11–16. The Court agrees.

To state a claim under the Fifth Amendment's Takings Clause, the plaintiff must plausibly allege the government took private property "for public use." U.S. Const. amend. V; *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 321 (2002). A classic taking occurs when the government exercises its power of eminent domain to gain possession of private property for public use. *See Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 537 (2005). Here, Epoch has not alleged a classical taking but instead alleged a regulatory taking, which occurs when governmental regulation of private property is "so onerous that its effect is tantamount to a direct appropriation or ouster." *Lingle*, 544 U.S. at 537. "[W]hile property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking." *Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1014 (1992).

---

[3] Fed. R. Civ. P. 12(b)(6); *Powrzanas v. Jones Util. & Contr. Co.*, 822 F. App'x 926, 927 (11th Cir. 2020) ("A dismissal for failure to state a viable claim, . . . under Rule 12(b)(6) . . . is an adjudication on the merits . . .").

16

Thus, the question before the Court is whether Epoch has plausibly alleged that Defendants' actions "[went] too far" so as to amount to a regulatory taking. *Id.*

The Supreme Court has "generally eschewed any set formula for determining how far is too far," instead "preferring to engag[e] in . . . essentially ad hoc, factual inquiries." *Id.* at 1015 (internal quotations omitted). This "ad hoc, factual inquir[y]" is set forth in *Penn Central Transportation Co. v. City of New York*, 438 U.S. 104 (1978), in which the Supreme Court identified several factors for courts to consider in determining whether a regulatory taking occurred: (1) "[t]he economic impact of the regulation on the claimant," (2) "interfere[nce] with distinct investment-backed expectations," and (3) "the character of the governmental action." 438 U.S. at 124.

The Supreme Court has further identified two "*per se*" takings that do not require this case-specific inquiry: (1) where the government regulation results in some physical invasion of the property, and (2) where the regulation denies all economically beneficial or productive use of land. *Lingle*, 544 U.S. at 538. The second category of *per se* takings applies only in "the extraordinary circumstance when no productive or economically beneficial use of land is permitted." *Tahoe-Sierra Pres. Council*, 535 U.S. at 330. The Supreme Court has clarified that "[a]nything less than a 'complete elimination of value,' or a 'total loss' . . . would require the kind of analysis applied in *Penn Central*." *Id.* (quoting *Lucas*, 505 U.S. at 1019 n.8). Accordingly, the Supreme Court has explained, "the default rule

17

remains that, in the regulatory takings context, we require a more fact specific inquiry." *Id.* at 332.

Here, Epoch claims it suffered the second category of "per se" taking. Dkt. 1 ¶¶ 71-83 ("By said denial, the City has, by regulation, deprived Epoch of all economic use and value of the Property."). As such, Plaintiff must have properly alleged that it lost "all economically beneficial or productive use" of the Property. *Murr v. Wisconsin*, 582 U.S. 383, 393 (2017) (citing *Lucas*, 505 U.S. at 1015). "In the *Lucas* context . . . the complete elimination of a property's value is the determinative factor." *Lingle*, 544 U.S. at 539 (citation omitted); *see also Lucas*, 505 U.S. at 1019 n.8 (stating that a landowner whose property value diminished 95% could not "claim the benefit of [*Lucas*'s] categorical formulation").

Defendant's motion correctly points out that Epoch has not been deprived of all economically beneficial use of the Property. Dkt. 41 at 11-16. Indeed, several of the exhibits attached to Plaintiff's Complaint provide alternative uses for the Property. The Statement of Uses Available on Owner's Land identified "[s]pecialty retail, office, hotel, multi-family uses subject to the land use allocation provided in Ordinance 2022-06," and "[a]n affordable housing development consistent with" Florida law. Dkt. 1-5 at 3. The City's email response to Epoch's Harris Act claim enumerated a list of permitted uses and structures, (a) through (q), that could be built on the Property. Dkt. 1-8 at 2-3. Moreover, based on Epoch's own appraisal report,

the Property has not suffered a complete elimination of value as required by *Lucas* for a *per se* taking. The appraisal report identifies a diminution in value of the Property from $7.65 million to $1 million. Dkt. 1-7 at 1.

Importantly, the Court notes the Complaint is not making a "partial regulatory" takings claim. The Supreme Court clarified that a plaintiff need not assert that it has been deprived of all economically beneficial use of its property if asserting a partial regulatory takings claim. *See Lingle*, 544 U.S. at 538–39. If making such a claim, courts use the *Penn Central* factors to determine if the at-issue regulation has caused an actionable taking. *Id*. If Epoch had instead alleged a partial regulatory taking, the proper inquiry would be whether Epoch has sufficiently stated a claim for a "*Penn Central* taking." *Lingle*, 544 U.S. at 548; *see Tahoe-Sierra Pres. Council*, 535 U.S. at 330 (2002) ("Anything less than a 'complete elimination of value,' or a 'total loss,' . . . require[s] the kind of analysis applied in *Penn Central.*" (citing *Lucas*, 505 U.S. at 1019–1020, n.8)). Plaintiff, however, has explicitly stated it is making "a *per se* taking in violation of the 5th and 14th Amendments" because the City deprived Epoch "of all economic use and value of the Property." Dkt. 1 ¶ 82. As pled, Epoch's *per se* takings claim in Count I is dismissed without prejudice.

      b.  *Count II—Exaction Claim*

The City argues that Epoch has failed to adequately plead its exaction claim because it previously proposed alternative uses for the Property that go beyond "the

City's Commissioner's expressed preference for mixed-use development." Dkt. 41 at 16–18. Lawful exaction requires an "essential nexus" between the "legitimate state interest" and "the permit condition exacted by the city." *See Dolan v. City of Tigard*, 512 U.S. 374, 386 (1994) (quotations omitted) (quoting *Nollan v. Cal. Coastal Comm'n*, 483 U.S. 825, 837 (1987)). If that nexus exists, the court must determine whether the condition is "rough[ly] proportional[]" to the "projected impact of the proposed development." *Id.* at 388-90; *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 612 (2013). These tests are both properly left to the factfinder. *See MCZ/Centrum Flamingo II, LLC v. City of Miami Beach*, No. 08-22419-CIV, 2009 WL 10700923, at *9 (S.D. Fla. Mar. 4, 2009).

Here, the City's proposed alternative uses do not automatically require the dismissal of Count II. Epoch's Complaint alleges these proposed alternative uses were insincere and illusory because the City refuses to approve any development without a mixed-use component. Dkt. 1 ¶¶ 56, 94-96. In other words, the City Commissioners' desire for a mixed-use development—as sufficiently alleged by the repeated denials of Epoch's development plan and some City Commissioners' explicit preference for mixed-use—is an alleged excessive exaction being levied on Epoch. *See* Dkt. 1 ¶¶ 29, 32, 45, 49-51, 59, 85, 91. Even after identifying the alleged condition, an evaluation of Epoch's exaction claim requires a fact-based analysis of the relationship between the City's interest in procuring a mixed-use development

and the public impacts if the Property received such a (mixed-use) development. If mixed-use benefits are not roughly proportional to the public impacts of such development, the exaction may be constitutionally suspect under *Nollan* and *Dolan*. *See Dolan*, 512 U.S. at 391.

However, at this stage of the proceedings, the Court declines to weigh in on such a fact-intensive inquiry. *See MCZ/Centrum Flamingo II*, 2009 WL 10700923, at *9 (noting an exaction claim involves "fact-intensive inquiries" and finding that the defendant raising "factual disputes based on matters outside the four-corners of the Complaint" would be "inappropriate at this juncture and insufficient to support its motion [to dismiss]"). At this time, Epoch has sufficiently alleged that the City failed to "identify any public impact aside from those resulting from the Deviations, which Epoch has . . . explicitly abandoned." Dkt. 1 ¶ 89. Accepting Epoch's factual allegations as true, the Court finds Plaintiff has adequately pled the lack of an "essential nexus" between the (mixed-use) condition imposed, the City's interest, and the public impact following Epoch's decision to drop the Deviations. *See Dolan*, 512 U.S. at 386, 390. Epoch has adequately pled its exaction claim in Count II.

   *c.  Count III—Procedural Due Process Claim*

Next, the City argues that Epoch has failed to adequately plead its procedural due process claim. Dkt. 41 at 18–21. In the Eleventh Circuit, "a § 1983 claim alleging a denial of procedural due process requires proof of three elements: (1) a deprivation

of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Kessler v. City of Key W.*, No. 21-11069, 2022 WL 590892, at *3 (11th Cir. Feb. 28, 2022) (citing *Grayden v. Rhodes*, 345 F.3d 1225, 1232 (11th Cir. 2003)). "When state law provides an adequate means to remedy the alleged procedural deprivation, there is no due-process violation regardless of whether the plaintiff availed himself of that remedy." *Id.* (citing *McKinney v. Pate*, 20 F.3d 1550, 1557 (11th Cir. 1994) (en banc)); *Horton v. Bd. of Cnty. Comm'rs of Flagler Cnty.*, 202 F.3d 1297, 1300 (11th Cir. 2000).

The City contends that Epoch failed to plead the first element because the Fourteenth Amendment does not protect the right to answer hypothetical questions in a public hearing. Dkt. 41 at 20. Epoch claims that the state deprived Epoch of its property interest "without just compensation" in violation of the Fifth Amendment. Dkt. 1 ¶¶ 99-101. But even if the Court accepts that Epoch has sufficiently alleged a deprivation of a procedural-due-process right, a constitutional-due-process violation occurs only when the state refuses to provide a process adequate to remedy that procedural deprivation. *See McKinney*, 20 F.3d at 1557, 1563; *Horton*, 202 F.3d at 1300. "The question is thus whether the state provided [Epoch] with the means to present [its] allegations, demonstrate that the [denial of the Current Application] was wrongful, and receive redress from that deprivation," whether Epoch used that process or not. *Reams v. Irvin*, 561 F.3d 1258, 1266 (11th Cir. 2009).

Here, the City argues there is no due process violation because "denial of the opportunity to speak . . . is not a denial of the opportunity to be heard[,]" and the City heard Epoch a second time in FLUEDRA proceedings. Dkt. 41 at 19–21. The Court agrees. While Epoch may not have been allowed to answer questions during the first public hearings (in June 2022) on the Current Application, Dkt. 1 ¶ 98, state law provided Epoch with "an adequate means to remedy the alleged procedural deprivation" via FLUEDRA. *Kessler*, 2022 WL 590892, at *3; *see* Fla. Stat. § 70.51. As alleged in the Complaint, Epoch utilized the FLUEDRA-required mediation proceedings to propose a new Revised Plan. Dkt. 1 ¶ 36. On June 27, 2023, the City held another public hearing to consider the Revised Plan, where Epoch answered questions from the City's commissioners and was heard. Dkt. 1 ¶¶ 42, 44, 46, 48. Further, the Complaint lacks any factual allegations contending that FLUEDRA is a constitutionally inadequate process or that the state refused to make remedial procedures available. As such, Plaintiff's procedural due process claim in Count III is dismissed for failure to state a claim.

### d. Count IV—Harris Act Claim

The City argues that Epoch has insufficiently pled its claim under the Harris Act because it does not hold legal title to the subject property. Dkt. 41 at 21–22. The Court agrees. Subsection (2) of the Harris Act reads:

> When a specific government action of a governmental entity has inordinately burdened an existing use of real property or a vested right

to a specific use of real property, *the property owner of that real property is entitled to relief*, which may include compensation for the actual loss to the fair market value of the real property caused by the action of government, as provided in this section. . . .

Fla. Stat. § 70.001(2) (2024) (emphasis added). The Harris Act defines a "property owner" as "the person who holds legal title to the real property . . . ." *Id.* § 70.001(3)(f). "Inordinate burden" or "inordinately burdened" means:

[A]n action of one or more governmental entities has directly restricted or limited the use of real property such that the property owner is permanently unable to attain the reasonable, investment-backed expectation for the existing use of the real property or a vested right to a specific use of the real property with respect to the real property as a whole, or that the property owner is left with existing or vested uses that are unreasonable such that the property owner bears permanently a disproportionate share of a burden imposed for the good of the public, which in fairness should be borne by the public at large.

*Id.* § 70.001(3)(e)(1).

Florida law strictly adheres to the statutory language that a property owner who commenced an action under the Harris Act must hold legal title. *Dean Wish, LLC v. Lee Cnty.*, 326 So. 3d 840, 848 (Fla. 2d DCA 2021); *see Bair v. City of Clearwater*, 196 So. 3d 577, 581 (Fla. 2d DCA 2016) ("The Bert Harris Act contains a very narrow waiver of sovereign immunity, *see* § 70.001(13), and such waiver statutes are strictly construed[.]"). Similarly, legal title holders of adjacent parcels, or joint legal title holders of the same parcel, cannot bring claims under the Harris Act in strict adherence to the statute's requirements. *See Hardee Cnty. v. FINR II, Inc.*, 221 So. 3d 1162, 1164 (Fla. 2017); *City of Jacksonville v. Smith*, 159 So. 3d

888, 889–94 (Fla. 1st DCA 2015); *Vale v. Palm Beach Cnty.*, 259 So. 3d 951, 953 (Fla. 4th DCA 2018); *DHBH Atl. L.L.C. v. City of Delray Beach*, 334 So. 3d 332, 336–37 (Fla. 4th DCA 2022).

Here, Epoch does not contest that it is not the legal title holder to the subject property as required under the Harris Act. Dkt. 42 at 13–14; Dkt. 1 ¶¶ 2, 9 ("Epoch is the equitable owner of the [P]roperty . . . Gdawg is the record title holder of the Property."). Instead, Epoch argues that the existence of a "vested right" allows it to bring the Harris Act claim because the Fifth Agreement allows Epoch to "step[] into the shoes" of Gdawg to pursue the claim. Dkt. 42 at 13–14. The Court disagrees.

Epoch ignores the statute's threshold requirement that only a "legal title" holder can sue when an "existing use" or "vested right" has been "inordinately burdened" by government action. *See* Fla. Stat. §§ 70.001(2), (3)(e), (3)(f); *City of Jacksonville v. Coffield*, 18 So. 3d 589, 593 (Fla. 1st DCA 2009) (determining, as a threshold issue, that the defendants were the "property owner" with legal title under the Harris Act before analyzing the defendants' vested right claim). In other words, the only party eligible to sue under the Harris Act is the "property owner" with legal title—i.e., Gdawg as the record title holder. Dkt. 1 ¶ 9; *see Dean Wish, LLC*, 326 So. 3d at 847 ("We recognize that the Act requires the person who holds legal title to wait to seek Harris [Act] relief until the governmental entity has burdened the property."). The land sale contract cannot modify the "clear and unambiguous"

25

statutory requirement that Epoch be a "person who holds legal title" to the Property. *Dean Wish, LLC*, 326 So. 3d at 846. Thus, the Court dismisses Epoch's Harris Act claim in Count IV without prejudice.

Even if the Court assumed Epoch is the "property owner" under the Act, Plaintiff's "vested right" claim is still inadequately pled. Epoch contends the language in Fla. Stat. § 70.001(3)(a) means that "under Florida's doctrine of equitable conversion, or pursuant to express written agreement, another party may 'step into the shoes' of the legal title holder for the purpose of pursuing a Harris Act claim." Dkt. 42 at 13–14. This seems to conflate equitable conversion with the doctrine of equitable estoppel.

The Harris Act states, "[t]he existence of a 'vested right' is to be determined by applying the principles of *equitable estoppel* or substantive due process under the common law . . . ." Fla. Stat. § 70.001(3)(a) (emphasis added). Under Florida law, "[t]he doctrine of equitable estoppel may be invoked against a governmental body when a property owner (1) relying in good faith (2) upon some act or omission of the government (3) has made such a substantial change in position or incurred such extensive obligations and expenses that it would be highly inequitable and unjust to destroy the rights that the owner has acquired." *Town of Ponce Inlet v. Pacetta, LLC*, 120 So. 3d 27, 29 (Fla. 5th DCA 2013) (citing *Citrus Cnty. v. Halls River Dev., Inc.*, 8 So.3d 413, 421-22 (Fla. 5th DCA 2009)). Indeed, "a necessary precondition for

equitable estoppel against the government is a governmental act or omission that invites a citizen 'onto a welcome mat.'" *Coffield*, 18 So. 3d at 597. This is also insufficiently pled.

## CONCLUSION

Plaintiff Epoch has not adequately pled some of its claims. Notwithstanding, because the Complaint is the first operative complaint partially dismissed by the Court, Plaintiff will have an opportunity to amend. Accordingly, it is hereby **ORDERED** and **ADJUDGED** that:

1.   The City's motion to dismiss, Dkt. 41, is **GRANTED-IN-PART and DENIED-IN-PART**.

2.   Plaintiff Epoch's claims in Counts I, III, and IV of the Complaint, Dkt. 1 ¶¶ 71-83, 97-132, are **DISMISSED without prejudice**.

3.   If Plaintiff chooses to file an Amended Complaint, it shall do so within **fourteen (14)** days of this Order.

**DONE AND ORDERED** at Tampa, Florida, on March 4, 2025.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**